Okay, I shall call the case. Can you hear me all right, Mr. Chisholm? Yes, I think I can. I have you on the speakerphone, and I think your voice is coming in loud and clear. Okay, this is case number 16-2508, Macias v. Army. Please proceed as the appellant. You have ten minutes for your case in chief, and we're saving five minutes for rebuttal. Is that correct? Yes. Okay, please proceed. Yes, ma'am. Please, the court. I think there's really two main issues in this case, at least for purposes of oral argument, and those issues are set forth in our reply brief. But I wanted to add that in regard to the posse comatose issue, it's an issue that the agency should not have brought because it doesn't fit the factual situation for posse comatose. I mean, in a way, it was overcharged, and it should never have been included. But to the extent that it was included and was a major feature of the cause for removal, they accused him of violating the posse comatose three times. To the extent that they couldn't prove that because there were no facts, I think it validates the decision. Well, he was charged with several violations. Was he not, with a record as to the speed at which he was traveling and sufficient details? I'm not sure I understand your point. Well, the point is that I think that the posse comatose stuff was a central part of the facts of why he was removed. And the posse comatose act, I mean, you have to commit these acts. Interdiction of a vehicle, vessel, aircraft, or other similar activity. Search or seizure. Arrest, apprehension, stop and arrest, or other similar activity. Use of military personnel for surveillance or pursuit of individuals or as undercover agents, informants, investigators, or interrogators. He didn't do any of that, and his testimony was unchallenged on that point. And the witness from the State University down there, they have their own police department in Monterey, California State University of Monterey. He backed that up, that Macias didn't do any of that. Now, I understand and acknowledge that there were some other violations, but this was the main one. And it was overcharged. The judge actually said he did this stuff three times. He didn't do it at all. And they really just said, if you leave the geographical area of the base, you violated the PCA. Now, I don't know if the court has entertained any posse comatose stuff, but it's a big deal. I mean, it's the federal government, and the military especially, is not supposed to go in and enforce the law. That's for local jurisdictions. I guess it's the separation of the federal government from the states and their law enforcement. It was a big deal during San Francisco in 1906 between the mayor and the president, and what the Army did during the earthquake. So the fact that they charged him, I mean, this was the heart of the factual charges against him. If you eliminate that, it has to go back and say, well, wait a second. If he didn't do that, maybe all this other stuff is overblown too. Mr. Clisham? This is Judge Lynn. Let me ask you this. The SOP 5.18 version of posse comatose talks about no action to enforce the civilian laws or provide assistance to civilian law enforcement will be taken. So there are two aspects to it, one enforcement and one providing assistance. Now, maybe he was not actively engaged in enforcement activities. He didn't arrest anybody. He didn't handcuff anybody. He didn't do any of those sorts of things. But he certainly, I mean, how can you say there was an improper charge when he was in his car, speeding along at 90 miles an hour, passing red lights in providing assistance, which is another aspect of the posse comatose regulation? I don't think there's any evidence at all that he provided assistance. He was there as an observer. What was he doing driving 90 miles an hour through red lights? Well, he was following the other officers, what he was doing. And, you know, I can't respond to that. That's not a PCA violation to go through a red light in California. It just isn't. If it were, there would be a lot of people that would be violating the PCA all the time. He has authority as a police officer and even a federal police officer to exceed the speed limit to a certain extent. Wait, only to do so in conjunction with his job, right? He doesn't have the authority to exceed the speed limit and run red lights when he's off on the weekend taking his kids to the movies or something, correct? Well, that's correct. But, look, I mean, he was charged with running red lights, but running red lights was not a part of the PCA charge. He was charged with simply leaving the installation. That's what the actual charge said. And he did leave the installation, but they said that that was a PCA violation, and it's not a PCA violation. And they made a big deal about the fact that he was violating federal law here. And that particular law, it's a crime. He could have been prosecuted for that. And they, you know, I think if they had left that out and charged him with speeding, you know, that may have held up. But other officers had been charged with speeding, and they weren't removed. So I think the PCA thing was a fatal charge on their part. He did not participate. He didn't search and seizure. And there are cases where a federal officer can stand by, and a federal officer can't assist one request. But the specific charge of posse comatose, I think, is fatal to this case. And it should never have been brought in. The fact that it was brought in prejudiced the whole case. And they, I mean, it's not just a thing, well, you were there, you know, and you saw something. They said that he violated three times because he went to three separate calls with this officer from the State University of Monterey. And I just don't think there's any facts. He didn't introduce the vehicle, definitely didn't engage in search and seizure, arrest, apprehension, et cetera. And I think I'd like to move on to the next issue, if that's all right with the Court. Okay, proceed. You have a few minutes. I have three minutes. You have three minutes, and you're a principal argument. But let's hear the next issue. Okay, the next issue, and I'll try to make this brief, is the comparators. There was a lot of evidence of, you know, of discipline that was imposed on other employees. And it's undisputed that the deciding officials didn't evaluate the comparators. And the final order and the initial decisions go on and on about the fact that while they were there, they were in the notice, which is correct. And there's no proof that it was new material and we didn't get a chance to respond to it. But I think the point on that, and we also put this in our reply, well, we didn't put all of it in the reply. The Douglass case requires the deciding officials to review the comparators. It's fair to do so with a due process violation. Deciding officials like a judge. These issues require to use independent judgments. It is undisputed that the deciding officials in this case did not review the comparators. He testified to that. The final order contained statements that the recommending officials did look at the comparators and provided the comparators. Let's see. You said that the recommending official and the deciding official in general refrain from discipline. That's insufficient. The deciding official under the cases, you know, the Cleveland case and other due process cases, say that the deciding official, like the judge, is required to exercise his own independent judgment on the comparator. It's not a group decision. It's not a committee meeting. Under Stone, the deciding official is Stone versus Federal Deposit Insurance Company. This is a subcircuit case from 1999. He said that the deciding official is required to weigh the comparator factors, and the decision notice should explain what weight was given to those factors in reaching the agency's decision. And the deciding official in this case didn't do that. He didn't sign the routine language that he was given by the human relations department. Stone also holds our system is premised on the procedural fairness of each stage of the removal proceedings. Employees are entitled to a certain amount of their due process rights at each stage, and when these rights are undermined, the employee is entitled to relief regardless of the state of the proceeding. Stone also holds that when there is a due process violation, in that case, ex plante communications, the removal must be reversed. The employee reinstated and provided back pay. Employees are entitled to a new constitutionally correct procedure. So I think that this is what the admission of the deciding official, that he didn't do this at all, deprived Macias of due process. It's a constitutional violation. He did not act like a judge. He simply took what was put in front of him and didn't make an independent decision on that discipline. And on those grounds, this matter should be reversed. And I think I've used up the time. Okay. No, thank you, Mr. Klishenau. You have time for rebuttal. Let's hear from the government, Ms. Bizak, and let us know if you don't hear her voice. She's standing at the podium. Thank you. Thank you, Your Honor. May it please the Court. First issue I would like to touch on is the fact that even taking into account the possibility or the instance in which this Court were to find that the Specification 2 concerning violation of SOP 518, which is the posse comitatus SOP, if the Court were to find that that specification were unsupported, Specification 1 under Charge 2 has not been challenged and is supported by substantial evidence and independently substantiates that charge. Thus, the three charges that the administrative judge and the Board found to be upheld have not been challenged before this Court. And those three charges support the penalty of removal. Is the one you're referring to requiring the officer to report in at least once an hour and remain in assigned areas, is that the one that you're saying wasn't challenged? Yes, Your Honor. That is, so Charge 2 is failure to obey or observe, I believe, written regulations, orders, rules, or procedures where danger to the public, where persons or property are not endangered. And that specification supports that charge. That is also, I believe Mr. Macias and Mr. Macias' counsel today have repeatedly claimed that this posse comitatus specification is the main charge, is the charge that really brought about this removal process. And the record simply does not support that. First of all, the Charge 2 itself is the one of the three charges, the only one of the three charges that does not contemplate the penalty of removal. Charge 1 and Charge 3 both contemplate that penalty, even for a first offense. And Charge 2, this would, I believe, be Mr. Macias' second offense. Even as a second offense, it does not contemplate the penalty of removal. Second of all, if you look at both the proposing official's notice and the decision document, not only is the only reference to posse comitatus come within the specification language itself. There is no mention anywhere of the posse comitatus act. When you get into the discussion of the Douglas factors, posse comitatus does not come up at all. The concerns are primarily to the endangerment to the safety of the public that was caused by Mr. Macias' actions, by the notoriety that his actions caused, negative notoriety to the Presidio Department for the variety of California vehicle codes, the variety of SOPs that he violated while in the company of officers from another department and in the public generally on university grounds. Neither notice contemplates the PCA violation as this is the charge that matters. Turning briefly to the comparator question, first the deciding official, both the proposing official and deciding official, did contemplate the consistency of the penalty with similar conduct and determined that there was no similar conduct that had been penalized to the violations that Mr. Macias did in this one night. Even if that were not sufficient, the administrative judge in this case re-reviewed the Douglas factors independently and looked at every single one of Mr. Macias' purported comparators and found that they were not in fact comparators, that they did not have a similar conduct that justified comparing them in this situation. Can the ALJ overcome a potential procedural deficit by the deciding official or is it more appropriate to remand? Would the deciding official possibly have made a different decision if he knew about the comparables? What is your view on that? First of all, Your Honor, I do think it amounts to harmless error at that point when you have the administrative judge and the board reviewing all of the purported comparators. The judge also pointed out, the administrative judge, that Mr. Macias provided 14 comparators. Ten of those comparators involved Deputy Chief Chaffee, who was the proposing official in this case. He was either the proposing or the deciding official in ten of those instances and in one other, Chief Steubinger, if I'm saying that right, was the deciding official. So the two officials involved in this case were involved in 11 of the 14 of those comparators. I think opposing counsel admitted that the Deputy Chief purported to decide all the comparables. So the fact that he was involved in ten of them, I think opposing counsel already admitted that those were considered. I think his problem is that the deciding official didn't. Well, the deciding official relied on Mr. Chaffee's effectively institutional knowledge of these comparators. There is no requirement that the way in which one must consider this Douglas factor is, as I believe Mr. Macias is arguing, that you have to go to HR and you have to ask HR what are these records. In this case, what Chief Steubinger did was rely on the knowledge of the deputy who had been there since the 80s who had indicated that he had never seen violations of this sort. And that is a sufficient review of that particular Douglas factor. And again, Your Honor, the administrative judge in this case did then specifically review all of those comparators and found them to be not applicable here. Your Honors, unless you have any further questions, we would just ask that the MSPB be affirmed in this case. Any more questions? Would you comment briefly a little bit more on the argument about disparate treatment and that some other punishment, such as a lengthy suspension, would have been more in keeping with responses to accepting that everything that has been alleged occurred? Certainly, Your Honor. In terms of disparate treatment specifically, that is certainly something that the petitioner in this case has the burden of proving. And again, based on the review of the administrative judge, the purported comparators that he is potentially trying to show disparate treatment in contrast to, these cases are not similar to his at all. As the administrative judge indicated, I don't believe in any of them was somebody charged with three different violations in one night. I'm not trying to parrot the posse comitatus SOP violation. I mean, charge one, charge two, and charge three in this case. In many of these, I think in all of these cases, no one had three prior instances of similar conduct like Mr. Macias did. In only, I believe, one of the cases was public safety an issue. And in that case, it was an individual who caused a car accident, and that individual ended up resigning prior to any decision on his removal notice. In this case, Mr. Macias put both the public and public property as well as government property in danger, particularly by his actions involving speeding without his lights on, well in excess of the posted speed limits, not clearing stop signs, through an area that has been reported to have many animals crossing the road, that has pedestrians crossing the road. I believe, as the chief of police pointed out, he was following or attempting to follow a law enforcement vehicle that had its lights on. When that happens, when you have that vehicle down the street with lights on, cars get out of the way. Once that vehicle has passed, they assume it is safe to get back on the street. If there is another vehicle behind that vehicle without its lights on, going 90 miles an hour, he is seriously endangering other motorists who may be getting back onto the road. The basic point here, Your Honor, is that the severity of the violations that did take place, that are uncontested in this case, that took place over a period of nearly two hours, demonstrated, again, in conjunction with Mr. Macias' prior disregard for written regulations for oral orders, caused his superiors to lose faith in his ability to make sound judgments, to be a police officer in charge of public safety. Any more questions? All right. Thank you, Ms. Bisa. Thank you. Mr. Cushing, five minutes for rebuttal, please. Yes. Yes. How much time do I have, Your Honor? Five minutes. Oh, I have five minutes. Okay. Thank you. I may not take five minutes. I think what I can point out in terms of the Posse commentators is that the petitioner, after he returned back to the main police truck, he self-reported everything that happened. So he wasn't sneaking around behind somebody's back and saying, well, I'm just out in this area just patrolling or something. And he had been instructed not to initiate activity. He had been instructed to only answer the service call. He's not charged with not answering the service call. When he went back in, he reported to his sergeant or the lieutenant that was in charge exactly what happened. That's how this whole thing started. So it's not something that he thought he was doing something wrong in the first place. And when this case falls out with the fact that he didn't really engage in law enforcement activity under the Posse commentators act, that charge should never have been made. And so I just wanted to emphasize that point. And I think we answered the questions about due process. I guess my final thing is that I think that the decision of this court in Stone has sufficient language in it that this was, that the duty of the deciding official to exercise his own independent evaluation of those comparators is key. It's due process due to the employee. And it doesn't really matter that the recommending official had taken a look at that list and had even made some comments in the recommendation. So I think that this is a big, I think the PCA is a big deal, the Posse commentators act. And I also think that this is a due process violation, that the deciding official didn't look at those comparators and just signed what was put in front of them as part of the decision. He's required to weigh those factors. There could be a recommendation from the deputy chief, which is what happened here, but he independently has to weigh that and that's part of the due process rights of the petitioner in this case. And I appreciate the attention of the court to this matter. Okay, any questions for Mr. Christian? Thank you, Mr. Christian. And thank you. The case is taken under submission. That concludes the argument schedule for this morning. Thank you. Okay, goodbye. Thank you. You guys are doing yourselves well. Thank you. Thank you very much. That's very good for you as well. Thank you. Thank you very much. You're welcome. Thank you. Thank you very much. Thank you.